**UNITED STATES DISTRICT COURT**

**EASTERN DISTRICT OF CALIFORNIA**

| | |
|---|---|
| In Re Ryan Uehling | Case No. 1: 13-mc-00022-BAM |
| Kelly Nelson,<br><br>Plaintiff,<br><br>Millennium Laboratories, Inc., *et al.,*<br><br>Defendants.<br><br>*Pending in the United States District Court for the District of Arizona as Case No. 2: 12-cv-01301-SLG* | **ORDER GRANTING MILLENNIUM LABORATORIES, INC.'S MOTION TO COMPEL RYAN UEHLING TO ANSWER DEPOSITION QUESTIONS** |

Pending before the Court is Millennium Laboratories, Inc.'s ("Defendants" or "Millennium") Petition for Motion to Compel Ryan Uehling ("Uehling") to Answer Deposition Questions. (Doc. 1.) Uehling is a third-party witness in *Nelson v. Millennium Laboratories, Inc.*, Case No. 2: 12-cv-01301-SLG (D. Ariz., filed June 18, 2012), the underlying litigation.

In addition to the Joint Discovery Statement filed on May 17, 2013, the parties have submitted various supplemental briefs in support of their respective positions. (Doc. 7, 11, 12, 16, 18, 20.) The Court heard oral arguments on June 21, 2013. (Doc. 21.) Counsel Donald Fischbach and Andrew Slater appeared in person for Uehling. Counsel Michael Loucks and Ryan Eddings appeared in person for Millennium. *Id.* Having carefully considered the parties' submissions, oral argument, and the record in this case, the Court GRANTS Millennium's Motion to Compel.

**ORDER**

## I. BACKGROUND

This dispute arises out of discovery in litigation currently pending in the United States District Court for the District of Arizona, *Nelson v. Millennium Laboratories, Inc.*, No. 2:12-cv-01301-SLG (D. Ariz. filed June 18, 2012). In that case, Plaintiff Kelly Nelson ("Nelson"), a former Millennium employee, asserts various employment-related claims (age and sex discrimination, sexual harassment, retaliation and various tort-based claims). Among these claims, Nelsen alleges Millennium retaliated against her for complaining about Millennium's improper business practices.

Ryan Uehling is not a party to the Arizona case. Uehling, a former Millennium employee, previously held the position of Regional Business Director in the West region and directly supervised Nelson prior to his termination from Millennium. Nelson identified Uehling as a witness in support of her claims against Millennium. Uehling resides in this District.

Uehling appeared for deposition on April 2, 2013, pursuant to notices and subpoenas served by both Nelson and Millennium. During direct examination by Nelson's counsel, Uehling testified, *inter alia*, that Nelson had been a model employee while reporting to him at Millennium and that in his view, there was no job-related basis for her termination. Uehling also testified that Nelson had expressed concerns to him regarding certain business practices that she had been directed to participate in as a Millennium employee.

Millennium's counsel thereafter questioned Uehling regarding his knowledge of those business practices. Millennium also sought to explore Uehling's potential bias. Uehling, however, refused to answer 135 questions on grounds of relevance and various privileges. Specifically at issue in this Motion are two privileges that were asserted to 61 deposition questions: (1) a non-designated statutory privilege based upon "certain statutory obligations to not reveal certain information;" and (2) attorney-client privilege.[1]

/./././

---

[1] The parties' Joint Statement presents the subject questions in a manner reflecting their previous meet and confer efforts. Thus, while the Court addresses questions as high as "Question No. 74," there are, in fact, only 61 questions presented in the Joint Statement. (Doc. 7.)

1

**ORDER**

## II. DISCUSSION

**A. Legal Standard**

Rule 26(b) states that "[p]arties may obtain discovery regarding any nonprivileged matter that is relevant to any party's claim or defense." Fed. R. Civ. P. 26(b). "Relevant information need not be admissible at the trial if the discovery appears reasonably calculated to lead to the discovery of admissible evidence." *Id.* Relevance requires only that the evidence have "any" tendency to prove or disprove "any" consequential fact. This test incorporates two separate components: (1) Logical relevance, meaning the evidence must have some tendency, however slight, to make any fact more or less probable; and (2) Legal Relevance, meaning the evidence must relate to a fact "of consequence" to the case, i.e., will the "fact" that the evidence is offered to establish help in determining some issue in the case? *See, Guthrey v. California Dept. of Corrections and Rehabilitation,* 2012 WL 2499938 (E.D. Cal. 2012), citing, Jones & Rosen, Federal Civil Trials and Evidence (2011) Evidence, para. 8:111, p. 8B-2. "'Generally, the purpose of discovery is to remove surprise from trial preparation so the parties can obtain evidence necessary to evaluate and resolve their dispute.' " *Moon v. SCP Pool Corp.*, 232 F.R.D. 633, 636 (C.D.Cal.2005) (quoting *Oakes v. Halvorsen Marine Ltd.*, 179 F.R.D. 281, 283 (C.D.Cal.1998)).

Rule 30 governs counsel's behavior during a deposition. In particular, Rule 30(c) provides:

> Examination and cross-examination of witnesses may proceed as permitted at the trial....
>
> An objection at the time of the examination--whether to evidence, to a party's conduct, to the officer's qualifications, to the manner of taking the deposition, or to any other aspect of the deposition--must be noted on the record, but the examination still proceeds; the testimony is taken subject to any objection. An objection must be stated concisely in a nonargumentative and nonsuggestive manner. A person may instruct a deponent not to answer only when necessary to preserve a privilege, to enforce a limitation ordered by the court, or to present a motion under Rule 30(d)(3).

Fed. R. Civ. P. 30(c)(1) & (2).

**B. Millennium's Motion to Compel**

Millennium's questions can be grouped into four categories: (1) Actions Uehling took with Millennium property after his termination; (2) Whether attorneys instructed Uehling to take certain actions with Millennium property; (3) Information and directives provided by United States

Attorneys in connection to Uehling's government/ statutory privileges; and (4) meetings Uehling had with attorneys representing Millennium's competitor, Ameritox. Uehling refused to answer the 61 questions falling in these categories, claiming attorney-client and statutory privileges.

### 1. Statutory Privilege[2]

The nature of Uehling's statutory privilege is not a matter of public record. Indeed, Uehling insists he cannot publically discuss the explicit basis for the privilege, nor can he discuss any subject matter related to the basis for this privilege.[3] Millennium suspects this statutory privilege relates to Uehling's status as a possible relator in a *qui tam* action, potentially filed under seal somewhere in the United States. Uehling represents he cannot publically discuss whether he is or is not a relator in a *qui tam* action.

In a *qui tam* action, confidentiality provisions of the False Claims Act seek to combat disclosure of information related to a sealed complaint that could compromise the government's investigation. *U.S. ex rel. Lujan v. Hughes Aircraft Co.,* 67 F.3d 242, 245 (9th Cir. 1995). Under the *qui tam* provisions, Congress mandated that a relator file the *qui tam* complaint under seal in a federal district court. *See* 31 U.S.C. § 3730(b). Specifically, 31 U.S.C. § 3730(b)(2) states that:

> A copy of the complaint and written disclosure of substantially all material evidence and information the person possesses shall be served on the Government pursuant to Rule 4(d)(4) of the Federal Rules of Civil Procedure. The complaint shall be filed in camera, shall remain under seal for at least 60 days, and shall not be served on the defendant until the court so orders. The Government may elect to intervene and proceed with the action within 60 days after it receives both the complaint and the material evidence and information.

31 U.S.C. § 3730(b)(2) allows the government to extend the time-frame which the complaint remains under seal: "[t]he Government may, for good cause shown, move the court for extensions of the time during which the complaint remains under seal under paragraph (2)."

The False Claims Act proscribes a jurisdictional barrier to *qui tam* actions that have been disclosed in a public forum:

---

[2] Uehling asserted a statutory privilege to the following deposition questions: 7, 15, 16, 17, 18, 20, 21, 22, 23, 24, 25, 27, 28, 29, 30, 31, 33, 34, 35, 36, 37, 38, 39, 47, 48, 49, 50, 52, 53, 55, 56, 64, 69, 70, 71, 72, 73 and 74.
[3] Uehling has filed documents under seal to clarify his statutory privilege. (Doc. 11, 12.)

3
**ORDER**

> [n]o court shall have jurisdiction over an action under this section based upon the public disclosure of allegations or transactions in a criminal, civil, or administrative hearing, in a congressional, administrative, or Government Accounting Office report, hearing, audit, or investigation, or from the news media, unless the action is brought by the Attorney General or the person bringing the action is an original source of the information.

§ 3730(e)(4)(A).

The public-disclosure question implicates two distinct but related determinations. First, "we must decide whether the public disclosure originated in one of the sources enumerated in the statute." *U.S. ex rel. Meyer v. Horizon Health Corp*., 565 F. 3d 1195 (9th Cir. 2009). When a public disclosure originates in one of these sources, we must then determine "whether the content of the disclosure consisted of the 'allegations or transactions' giving rise to the relator's claim, as opposed to 'mere information.' " *Id.* (quoting *Hagood v. Sonoma County Water Agency*, 81 F.3d 1465, 1473 (9th Cir.1996)). The Ninth Circuit has held that "information that was 'disclosed in private" is not a public disclosure under the Act. *United States ex rel. Schumer v. Hughes Aircraft Co*., 63 F.3d 1512, 1518 (9th Cir.1995) (quoting *United States ex rel. Stinson, Lyons, Gerlin & Bustamante v. Prudential Ins. Co*., 944 F.2d 1149, 1161 (3d Cir.1991)), vacated on other grounds by 520 U.S. 939, 117 S.Ct. 1871, 138 L.Ed.2d 135 (1997); *see also United States ex rel. Devlin v. California,* 84 F.3d 358, 360 (9th Cir.1996) (holding that, although a newspaper article was a public disclosure, a relator's private disclosure to a reporter in advance of publication was not a public disclosure). Moreover, a public disclosure is restricted to information that is actually made public as opposed to material that is "'only theoretically available upon the public's request.'" *Id.* at 1519-20 (quoting *United States ex rel. Springfield Terminal Ry. Co. v. Quinn*, 14 F.3d 645, 652-53 (D.C. Cir.1994)).

Whether a relator's deposition testimony constitutes a public disclosure of information turns on whether the testimony is filed in a court's public record. Courts agree that a relator providing testimony as a non-party witness in cases unrelated to the *qui tam* action do not publically disclose the nature and existence of the qui tam action if the deposition testimony is not filed with the court. *See, U.S. ex rel. Putnam v. Eastern Idaho Regional Medical Center*, 2009 WL 2901233 (D. Idaho, 2009); citing *United States ex rel. Schumer v. Hughes Aircraft Co*., 63 F.3d 1512, 1519 (9th Cir.1995), vacated on other grounds; *United States ex rel. Ramseyer v. Century Healthcare Corp*., 90

4
**ORDER**

F.3d 1514, 1519 (10th Cir.1996) ("We agree with the District of Columbia and Ninth Circuits that 'public disclosure' signifies more than the mere theoretical or potential availability of information."). On the other hand, discovery documents filed with the court are publically disclosed. *Haqood v. Sonoma County Water Agency*, 81 F.3d 1465, 1474 n. 13 (9th Cir.1996) ("That documents filed with an agency or court during administrative proceedings or civil litigation are considered publicly disclosed is a firmly established principle.")

Assuming Uehling is a relator in a *qui tam* action, the primary inquiry at issue is whether his answers to the subject deposition questions would constitute a "public disclosure" of the "allegations or transactions giving rise to the relator's claim, as opposed to mere information.*" U.S. ex rel. Meyer v. Horizon Health Corp.*, 565 F. 3d 1195 (9th Cir. 2009) (internal quotations omitted). The parties' arguments dispute whether a responsive answer to these questions could potentially disclose the nature and existence of a potential *qui tam* claim, however, neither party has discussed whether deposition testimony is a *public* disclosure. The Court is convinced that as long as deposition testimony is not made part of a court's public record, deposition testimony is not a public disclosure.

At oral argument, the Court posed a hypothetical to Uehling's counsel: If the Court were to order Uehling to answer all the questions to which he asserted this statutory privilege, however, also ordered the deposition of Uehling be taken under seal, whether Uehling's confidentiality concerns would be satisfied? Doc. 20, 31: 21-24. Uehling's counsel replied that sealing the Uehling deposition "very well may" resolve Uehling's statutory concerns. (Doc. 20, 31: 25.) Having carefully considered the competing considerations involved in Millennium's Motion, the Court finds that requiring Uehling to answer questions to which he asserted this statutory privilege in a sealed deposition does not jeopardize any "statutory privilege," assuming one exists.[4]

---

[4] At oral argument, the Court explained the balance of interests involved in ruling on Millennium's Motion. Uehling intends to provide testimonial evidence in support of Nelson's claims against Millennium. Uehling's credibility as a key witness is highly relevant to Millennium's defense. Thus, Millennium is entitled to explore Uehling's potential bias and credibility. On the other hand, Uehling may well have a valid statutory obligation that, if undermined, could harm important investigative and enforcement efforts of the United States government. Requiring Uehling submit to a continued deposition under seal harmonizes these competing considerations.

### 2. Attorney-Client Privilege

Uehling asserted an attorney-client privilege to forty-six questions.[5] As a preliminary matter, the parties' Joint Statement is unclear as to whether federal common law or California law provides the proper standard of decision to evaluate the privilege claim. Millennium's portion of the Joint Statement submits that federal common law applies to Uehling's claim of privilege, whereas Uehling cites authority applying both federal and California privilege law.

The plaintiff in the underlying *Nelson* action asserts both federal and state claims. Thus, the underlying *Nelson* action arises under federal question jurisdiction pursuant to 28 U.S.C. § 1331, and the Arizona District Court retains supplemental jurisdiction over Nelson's state law claims pursuant to 28 U.S.C. § 1367(a). Under these circumstances, federal common law generally will apply to all parties' claims of privilege. *See,* Fed. R. Evid. 501; *Dowling v. Am. Haw. Cruises, Inc.,* 971 F.2d 423, 425 (9th Cir. 1992).

Here, however, Uehling is not a party to this action, and Millennium's motion to compel Uehling's deposition testimony is an "independent action" filed in California. *Palmer v. Fisher,* 228 F.2d 603, 608-09 (7th Cir. 1955) ("Since the proceeding to suppress a deposition is an independent action, the law of the forum is the law of Illinois"), *cert. denied,* 351 U.S. 965, 76 S.Ct. 1030, 100 L.Ed. 1485 (1956), *overruled on other grounds* in *Carter Products, Inc. v. Eversharp, Inc.*, 360 F.2d 868, 870–72 (7th Cir.1966). Another California court has held that where, as here, state and federal claims are joined and a non-party deponent in a foreign deposition proceeding asserts attorney-client privilege, "the privilege of the state in which the deposition is taken applies." *Shaklee Corp. v. Gunnell,* 110 F.R.D. 190 (N.D. Cal. 1986) ("In a foreign deposition proceeding the privilege of the state in which the deposition is taken applies. . . . Thus California law applies in this proceeding"). Moreover, at oral argument, the Court expressed its belief that California privilege law applied. (Doc. 20, 6: 19-25, 7: 1-4.) (. . . "so I'm assuming California attorney/client privilege law applies. If that's not the case . . . there might be a choice of law . . . issue here. But I don't know that. Nobody raised it, so I'm going to assume that's not an issue before the parties.") Neither party raised any

---

[5] Doc. 7, Questions No. 2, 3, 15-20, 23, 25, 26, 28, 30, 32, 34-37, 40-48, 50-53, 55, 57, 61-68.

disagreement with the Court's belief that California law should apply to Uehling's claim of privilege. Accordingly, the Court applies California law to Uehling's privilege claim.

Under California law, "evidentiary privileges such as the attorney-client privilege are governed by statute." *HLC Props., Ltd. v. Superior Court*, 35 Cal.4th 54, 59, 24 Cal.Rptr.3d 199, 202, 105 P.3d 560 (2005); *Moeller v. Superior Court*, 16 Cal.4th 1124, 1129, 69 Cal.Rptr.2d 317, 320, 947 P.2d 279 (1997). More specifically, California Evidence Code §§ 950 et seq. provides for the "lawyer-client privilege," which attaches to "confidential communication between client and lawyer" during the course of the attorney-client relationship. Cal. Evid.Code § 952; *Moeller,* 16 Cal.4th at 1130, 69 Cal.Rptr.2d at 320, 947 P.2d 279. "Confidential communications include information transmitted between attorney and client, and 'a legal opinion formed and the advice given by the lawyer in the course of that relationship.'" *Calvert v. State Bar,* 54 Cal.3d 765, 779, 1 Cal.Rptr.2d 684, 691, 819 P.2d 424 (1991) (quoting Cal. Evid.Code § 952).

"The party claiming the privilege has the burden of establishing the preliminary facts necessary to support its exercise, i.e., a communication made in the course of the attorney-client relationship." *Costco Wholesale Corp. v. Superior Court*, 47 Cal.4th 725, 732, 101 Cal.Rptr.3d 758, 219 P.3d 736 (2009). "Once that party establishes facts necessary to support a prima facie claim of privilege, the communication is presumed to have been made in confidence and the opponent of the claim of privilege has the burden of proof to establish the communication was not confidential or that the privilege does not for other reasons apply." *Costco Wholesale Corp.*, 47 Cal.4th at 733, 101 Cal.Rptr.3d at 764, 219 P.3d 736 (citing Cal. Evid.Code § 917(a); *Wellpoint Health Networks, Inc. v. Superior Court,* 59 Cal.App.4th 110, 123, 68 Cal.Rptr.2d 844, 852 (1997)).

### i. Actions Uehling Took With Respect To Millennium Property

Millennium asked Uehling twenty-six questions concerning actions Uehling took with Millennium property.[6] This property includes but is not limited to Millennium-owned laptops, hard drives and emails. For example, Millennium asked questions such as where certain Millennium property is currently located; whether and when Uehling accessed Millennium property; and

---

[6] Doc. 7, Questions No. 15-18, 20, 24, 34-37, 40-48, 50-55 and 57.

Uehling's motivation for taking these actions, just to name a few examples. (Doc. 7, 31-33.) For each and every one of these questions, Uehling asserted an attorney-client privilege.

Uehling's attorney-client privilege objections concerning actions he took with Millennium property are overruled. First, several of these questions appear to concern periods of time prior to Uehling's contact with attorney to represent him. Millennium questioned Uehling about actions he took from the moment he heard he was terminated through a trip he took to meet with a law firm in Houston. Any actions or communications during the interval before Uehling established an attorney-client relationship with the Houston law firm could not have been protected by the attorney-client privilege for the simple reason that Uehling then had no lawyer.

Second, even after creation of an attorney-client relationship, the privilege does not shield underlying facts from discovery. *See Murdoch v. Castro*, 609 F.3d 983, 995 (9th Cir. 2010), *cert. denied*, 131 S. Ct. 2442 (2011); *Johnson v. Hewlett-Packard Co.,* 2010 WL 4510345 (ND. Cal. 2010) (questions that "generally ask for underlying facts that do not require disclosure of the content or substance of communications between attorney and client" do not qualify for attorney-client privilege); *State Farm Fire & Casualty Co. v. Super. Ct.,* 54 Cal.App.4th 625, 639–40, 62 Cal.Rptr.2d 834 (Cal.Ct.App.1997) (underlying facts of an attorney-client relationship, such as whether a communication took place, the identity of parties who were present, and the date of the communication, are not privileged); *Zurich Am. Ins. Co. v.Super. Ct.,* 155 Cal.App.4th 1485, 1498, 66 Cal.Rptr.3d 833 (Cal.Ct.App.2007) (citing *Upjohn Co. v. United States,* 449 U.S. 383, 395, 101 S.Ct. 677, 66 L.Ed.2d 584 (1981)) ("The [attorney-client] privilege only protects disclosure of communications; it does not protect disclosure of the underlying facts by those who communicated with the attorney"). Such facts include a client's actions, which cannot be shielded from discovery merely because an attorney was present to observe them. Stated another way, the attorney-client privilege only protects certain *communications*; it does not protect disclosure of the underlying facts of those communications.

### ii. Whether attorneys instructed Uehling to take certain actions with Millennium property

Millennium's line of questioning concerning Uehling's use and withholding of Millennium property also inquired if attorneys had instructed Uehling to take such actions. For example, Millennium asked if attorneys instructed Uehling to retain Millennium property or copy files from Millennium property. (Doc. 7, Questions No. 2 & 3.) Uehling refused to answer these questions, citing attorney-client privilege.[7] Millennium argues that even if these communications fell within the attorney-client privilege, the privilege would not apply due to the crime-fraud exception. Uehling responds that because there is no evidence that any communications Uehling had with his counsel facilitated or concealed a continuing or contemplated crime, the crime-fraud exception does not apply.

Under California law, there is no attorney-client privilege "if the services of the lawyer were sought to enable or aid anyone to commit or plan to commit a crime or fraud." Cal. Evid.Code § 956. This crime-fraud exception to the attorney-client privilege is "very limited," and its proponent must make two showings. *Geilim v. Sup.Ct.*, 234 Cal.App.3d 166, 174, 285 Cal.Rptr. 602 (1991). First, it must establish a prima facie case of crime or fraud. *Cunningham v. Connecticut Mut. Life Ins.*, 845 F.Supp. 1403, 1412 (S.D.Cal.1994) (citing *BP Alaska Exploration, Inc. v. Sup.Ct.*, 199 Cal.App.3d 1240, 1262, 245 Cal.Rptr. 682 (1988). A prima facie case under 956 is made where the proponent of the exception demonstrates sufficient evidence from which reasonable inferences can be drawn to show that the fraud or crime has some foundation in fact. *State Comp. Ins. Fund v. Superior Court*, 91 Cal.App.4th 1080, 1090–1091, 111 Cal.Rptr.2d 284 (2001). In other words, evidence from which reasonable inferences can be drawn to establish the fact asserted, i.e., the crime or fraud. Second, it must establish a reasonable relationship between the crime or fraud and the attorney-client communication. *BP Alaska*, 199 Cal.App.3d at 1268, 245 Cal.Rptr. 682.

Millennium argues that the evidence shows Uehling committed criminal and fraudulent acts before and likely during his meetings with counsel in Houston. For example, Uehling admitted to taking the following actions during his deposition: (i) transporting the laptop (ii) containing the trade

---

[7] This category of inquiry applies to Questions No. 2, 3, 19, 25, and 26. (Doc. 7.)

secrets of Millennium (iii) across state lines from California to Texas after he was fired (iv) when he knew he had no authority to do so. (Doc. 7, 27: 2-14.) Millennium also argues that evidence on the laptop itself demonstrates that documents were altered, deleted, copied and printed, and that drive cloning software was installed on the laptop. *Id.* All of these actions, Millennium argues, likely violate a number of federal criminal statutes, including the Computer Fraud and Abuse Act, the Interstate Transportation of Stolen Property Act, the Mail and Wire Fraud Act, and theft of trade secrets. *See* 18 U.S.C. § 1030; 18 U.S.C. § 2314; 18 U.S.C. §§ 1341, 1343; 18 U.S.C. § 1831.

The crime-fraud exception applies to communications by Uehling's attorneys directing Uehling to take certain actions with Millennium property. A reasonable inference can be drawn from Uehling's retention and use of Millennium property after his termination that some unlawful act was committed. The questions posed by Millennium's counsel inquired if Uehling's attorneys instructed Uehling to take potentially unlawful actions with Millennium's property. Thus, there is a reasonable relationship between the crime or fraud and the attorney-client communication and such communications would not be protected.

### iii. Attorney Instructions Not To Answer Questions On the Basis of Statutory Privilege

Discussed above, Uehling refused to answer numerous questions based on an unspecified statutory privilege. Millennium posed several questions seeking to ascertain whether someone from the United States government instructed Uehling to assert the statutory privilege, and who the individual making such an instruction was.[8] In addition to Uehling's assertion of a statutory privilege, Uehling also asserted an attorney-client privilege.

Uehling's assertion of the attorney-client privilege to these questions was improper for two reasons. First, Uehling failed to demonstrate the existence of an attorney client relationship. "The party claiming the privilege has the burden of establishing the preliminary facts necessary to support its exercise, i.e., a communication made in the course of the attorney-client relationship." *Costco Wholesale Corp. v. Superior Court*, 47 Cal.4th 725, 732, 101 Cal.Rptr.3d 758, 219 P.3d 736 (2009).

---

[8] The subject questions in this category are Questions No. 22, 23, 28, 29, 30, 32 and 70. (Doc. 7.)

Uehling did not meet his burden to demonstrate the existence of an attorney-client relationship with the United Sates government.

Second, even if Uehling had properly demonstrated the existence of an attorney-client relationship, questions concerning whether an individual instructed Uehling to refuse to respond to certain types of questions, and who that person was, is not a protected communication under the privilege. *Johnson v. Hewlett-Packard Co.,* 2010 WL 4510345 (ND. Cal. 2010) (questions that "generally ask for underlying facts that do not require disclosure of the content or substance of communications between attorney and client" do not qualify for attorney-client privilege); *State Farm Fire & Casualty Co. v. Super. Ct.,* 54 Cal.App.4th 625, 639–40, 62 Cal.Rptr.2d 834 (Cal.Ct.App.1997) (underlying facts of an attorney-client relationship, such as whether a communication took place, the identity of parties who were present, and the date of the communication, are not privileged).

### iv.    Uehling's Interactions With Ameritox

Millennium suspects Uehling is working with attorneys representing one of its competitors, Ameritox. In this regard, Millennium posed several questions inquiring if attorneys from Ameritox represent Uehling, or if Uehling had communications with attorneys from Ameritox.[9] Uehling refused to answer these questions and asserted the attorney-client privilege.

Again, Uehling's assertion of the attorney-client privilege to these questions was improper for two reasons. First, by refusing to answer whether attorneys from Ameritox represented Uehling, Uehling failed to demonstrate the existence of an attorney-client relationship. Second, none of Millennium's questions inquired into the substance of any potential communications. Millennium's questions inquired if any communications ever took place. Information of this type is not protected by the attorney-client privilege. *Johnson v. Hewlett-Packard Co.,* 2010 WL 4510345 (ND. Cal. 2010); *State Farm Fire & Casualty Co. v. Super. Ct.,* 54 Cal.App.4th 625, 639–40, 62 Cal.Rptr.2d 834 (Cal.Ct.App.1997).

---

[9] The subject questions before the Court are Questions No. 61-68 in the parties' Joint Statement. (Doc. 7.)

### 3. Relevance Objections

Uehling objected to three questions as irrelevant. (Doc. 7, Questions No. 1, 2, 3.) These objections are overruled.

Federal Rule of Civil Procedure 30 states what types of objections counsel may make during a deposition, how counsel must state objections, and when counsel may instruct a deponent not to answer. Rule 30 provides in relevant part:

> An objection at the time of the examination ... must be noted on the record, but the examination still proceeds; the testimony is taken subject to any objection. An objection must be stated concisely in a nonargumentative and nonsuggestive manner. A person may instruct a deponent not to answer only when necessary to preserve a privilege, to enforce a limitation ordered by the court, or to present a motion under Rule 30(d)(3).

Absent compelling circumstances not present here, it is not necessary to object during a deposition on relevance grounds. *Quantachrome Corp., Micrometrics Instrument Corp.*, 189 F.R.D. 697, 700 (S.D. Fla. 1999) ("It is arguable whether objections based on relevancy should even be made during the deposition.") Even in the face of irrelevant questions, the proper procedure is to answer the questions, noting them for resolution at pretrial or trial, unless the questions are so pervasive that a motion under Rule 30(d)(3) is appropriate. *In re Stratosphere Corp.*, 182 F.R.D. at 618–19 (citations omitted). However, neither the wholesale refusal of a witness to answer a question nor an instruction from counsel not to answer a question on relevance grounds is appropriate "unless and until the pervasive or other nature of the questioning makes it obvious that it is necessary to stop the deposition and seek relief under Rule 30(d)(3) for being conducted in a manner evidencing bad faith, or to embarrass, annoy, or oppress the deponent." *In re Stratosphere Corp.*, 182 F.R.D. at 619; *see also Resolution Trust Corp. v. Dabney,* 73 F.3d 262, 266 (10th Cir.1995) ("It is inappropriate to instruct a witness not to answer a question on the basis of relevance.").

### 4. Forfeiture of Objections

The Court notes that potentially meritorious objections to the form of some of the subject questions were never raised. These objections are waived. *Sequoia Porperty and Equipment Ltd. Partnership v. U.S.,* 2002 WL 507537 (E.D. Cal. 2002).

### C. Uehling's Continued Deposition

Based on the foregoing, the Court will compel Uehling to submit to a continued deposition. This continued deposition will be taken under seal.

In conducting Uehling's continued deposition, the Court ADMONISHES Uehling that the vast majority of his attorney-client privilege assertions were wholly unjustified and improperly obstructed Millennium's legitimate discovery efforts.  The Court has declined to impose sanctions on Uehling solely because his potential statutory privilege presented unique complications to completing his deposition.  Having resolved Uehling's statutory concerns, the Court ADMONISHES Uehling that frivolous assertions of privileges or otherwise refusing to answer Millennium's questions will result in the imposition of sanctions.

### CONCLUSION

Based on the foregoing, the Court GRANTS Millennium Laboratories, Inc.'s Motion to Compel Ryan Uehling to Answer Deposition Questions in its entirety.  Within twenty (20) days of the date of this Order, Ryan Uehling will submit to a continued deposition, which shall be taken under seal, and answer the questions presented in this Motion.

IT IS SO ORDERED.

Dated:   **June 27, 2013**               /s/ Barbara A. McAuliffe
                                         UNITED STATES MAGISTRATE JUDGE