1  Donald R. Fischbach          #053522
   Stephanie Hamilton Borchers  #192172
2  G. Andrew Slater             #238126
   DOWLING, AARON INCORPORATED
3  8080 North Palm Avenue, Third Floor
   P.O. Box 28902
4  Fresno, California 93729-8902
   Tel: (559) 432-4500 / Fax: (559) 432-4590
5  E-mail: dfischbach@dowlingaaron.com
           sborchers@dowlingaaron.com
6          aslater@dowlingaaron.com

7  Attorneys for Non-Party to Action
   RYAN UEHLING

8

9

10                     UNITED STATES DISTRICT COURT

11                     EASTERN DISTRICT OF CALIFORNIA

12

13  IN RE RYAN UEHLING                    Case No. 1:13-mc-00022-BAM

14  ────────────────────────────

15  KELLY NELSON,                         **OPPOSITION TO DISCOVERY
                                          MOTION'S REQUEST FOR OSC TO
                Plaintiff,                HOLD THIRD PARTY WITNESS RYAN
16                                        UEHLING IN CONTEMPT**

17  vs.

18  MILLENNIUM LABORATORIES, INC., a      Date: May 30, 2014
    California corporation; JASON BRISTOL, an   Time: 9:00
19  individual; and DOES 1-10, inclusive,    CR:  8
                                          Judge: Hon. Barbara A. McAuliffe
20                Defendants.

21  ────────────────────────────

22  I.      **INTRODUCTION**

23          Ryan Uehling is a witness in an employment lawsuit between Kelly Nelson and

24  Millennium Laboratories, Inc.  This entire dispute started after Millennium attempted to use an

25  Arizona employment lawsuit as early discovery for its anticipated defense of a False Claims Act

26  case that Millennium suspected Mr. Uehling had filed.  Now, more than a year later, Millennium

27  seeks to have Mr. Uehling incarcerated because he will not answer questions such as, "Did an

28  attorney instruct you not to return company property" because Millennium claims it needs the

answer to this question in order to defend itself in the *Nelson* litigation. Put simply, these discovery proceedings have run so far afield of Mr. Uehling's role as a witness in the *Nelson* litigation that it is difficult to articulate any relationship between the two.

Nevertheless, in its motion to hold this third party in contempt of court, Millennium characterizes Mr. Uehling's conduct in exercising his rights of appeal as "completely frivolous" and describes communications with his suspected qui tam counsel as actions "relating to his criminal acts." Millennium uses phrases like "defy the rule of law," "looming trial date," and "flagrantly disobeys," and peppers its papers with adverbs and italics meant to emphasize, apparently, the supposedly heinous nature of Mr. Uehling's exercise of the right to judicial review of district court orders.

While heavy on hyperbole, Millennium's motion fails to address the very basic question of what constitutes contempt of court: has Mr. Uehling's conduct actually obstructed justice in any way? Is Mr. Uehling or his counsel's conduct calculated to obstruct justice or to cause embarrassment or disrespect to this Court? The answer to both questions is no.

While Mr. Uehling recognizes and respects that this Court has the authority to recommend that Judge O'Neill have a hearing to determine whether Mr. Uehling should be held in contempt, this Court also has the absolute authority not to. 28 U.S.C. 626(e)(6)(B)(iii). This Court can reasonably conclude that Mr. Uehling has substantially complied with this Court's orders and that, based on the extremely tangential and improper nature of the remaining three questions, contempt of court is not appropriate. Such a determination would be appropriate and just given that there has been no intent to disobey court orders, only an attempt to preserve rights, and no obstruction of justice, because the *Nelson* trial will be unaffected by what Mr. Uehling may have been told by his lawyers with respect to his possession of company documents.

Similarly, this Court could decline to recommend contempt proceedings based on a renewed examination of the relevance and privilege claims. Since these issues were last presented to this Court, it has become clear that only Millennium's False Claims Act attorney has any interest in the answers to these questions, which is not surprising given that the questions

**OPPOSITION TO REQUEST FOR OSC TO HOLD**
**THIRD PARTY WITNESS UEHLING IN CONTEMPT**

have nothing to do with Kelly Nelson's case at all.  Nor do the three remaining disputed questions illuminate anything about Mr. Uehling's credibility or bias beyond what has already been established by Millennium.  Additionally, the Court now has available to it a more extensive examination of the crime-fraud exception given the more narrowed focus of this current discovery dispute.

Mr. Uehling and his counsel have not done anything except attempt to obtain judicial review of what they continue to believe to be an erroneous and very dangerous application of the crime-fraud exception in a suspected False Claims Act case.  Neither Mr. Uehling nor his counsel have ever intended to obstruct justice, nor have they obstructed justice, as the *Nelson* litigation has moved forward wholly unaffected by Millennium's continued attempts to get qui tam related information out of Mr. Uehling.  Accordingly, Mr. Uehling and his counsel respectfully request this Court decline to issue findings in support of a recommendation for contempt in this case.

## II.   BACKGROUND

In April 2013, both Plaintiff and Defendant noticed Mr. Uehling's deposition for the *Nelson* matter.  However, when Mr. Uehling appeared for his deposition, he encountered Millennium's False Claims Act attorney from Boston as his primary examiner, not Millennium's attorneys in the *Nelson* case.  Having been completely sandbagged and unsure of how to protect his interests, Mr. Uehling refused to answer 135 questions on various privilege and relevance grounds.  Through the meet and confer process, Mr. Uehling and his counsel were able to narrow the dispute to about half of the originally objected to questions.  (See Order, Doc. 22.)  After this Court ordered him to respond to all disputed questions, Mr. Uehling did so quickly in order to accommodate Millennium's discovery cut-off in the *Nelson* litigation.  (See *Nelson v. Millennium Laboratories, Inc*., No. 2:12-cv-01301-SLG (D. Ariz. Filed June 18, 2012, Doc. 27.)

In the meantime, Mr. Uehling had petitioned the Ninth Circuit for immediate relief from answering five questions which sought attorney-client privileged information pending review of the merits of this Court's application of the crime-fraud exception.  The Ninth Circuit

/ / /

granted that immediate relief.  (Doc. 30.)  The questions that the Ninth Circuit ordered stayed were:

> Q2:    "Mr. Loucks:   Did an attorney instruct you not to return company property?"
>
> Q3:    "Mr. Loucks:  Did you get an instruction from a law firm to copy Millennium files after you were terminated, Mr. Uehling?"
>
> Q19:  "Mr. Loucks: Did you do that at somebody else's request?"[1]

After the Ninth Circuit ordered that the issues presented by Mr. Uehling's writ be fully briefed, and then subsequently ordered the writ to a merits panel for oral argument and decision, the final panel nevertheless concluded that Mr. Uehling had an adequate appeal remedy:  appeal from a contempt citation.  (Doc. 58.)  At his continued deposition Mr. Uehling continued to assert his attorney-client privilege in order to preserve his right to judicial review of the finding that there was sufficient evidence of a "crime" to justify vitiating the attorney-client privilege.  (Uehling Vol. IV Dep. Tr.)

At the present time, Mr. Uehling has answered 58 of the 61 disputed questions and reasonable follow up, and has appeared four (4) times to have his deposition taken by Millennium's False Claims Act counsel.  Plaintiff Kelly Nelson's attorneys have not even attended any of Mr. Uehling's depositions after the first one; in fact, no trial counsel from the *Nelson* litigation was present at the most recent deposition (Mr. Loucks appeared; there was no appearance for Plaintiff at all; Littler Mendelson had local counsel sit in, but trial counsel did not attend).  Millennium has subpoenaed Mr. Uehling to testify in a coverage action related to the Department of Justice's investigation against it, and he has had to defend motions to compel further deposition and document discovery by Millennium's insurance company.  (*Millennium Laboratories, Inc. v. Allied World Assurance Company (U.S.) Inc.*, Case No 1:14-mc-00009-LJO-BAM.)  Millennium has obtained all the information it possibly needs to establish Mr. Uehling's credibility and bias in the *Nelson* litigation, and then some.  He respectfully requests

---

[1] Consistent with his continued good faith efforts and the sincerity of Mr. Uehling's legal dispute, he subsequently withdrew his continued objection to two of the questions that the Ninth Circuit had stayed, and has answered those questions.  (Uehling Depo. Vol. III, IV.)

DOWLING|AARON
INCORPORATED
ATTORNEYS AND COUNSELORS AT LAW

that this Court decline to recommend contempt in this case as his conduct has not been calculated to obstruct the administration of justice, nor has it actually obstructed the administration of justice.

### III.   ARGUMENT

#### A.   Mr. Uehling Has Not Obstructed Justice And Holding Mr. Uehling In Contempt Of Court Will Not Aid The Administration Of Justice

Contempt of court is defined as conduct which is calculated to defy the authority or dignity of a court, "because such conduct interferes with the administration of justice." Black's Law Dictionary (7th ed.) P. 313.   Mr. Uehling's and his counsels' conduct in these proceedings has been, at all times, conducted with the utmost respect for this Court.  After the Court's order on the original motion to compel was affirmed by Judge O'Neill, Mr. Uehling made himself available to comply with the order, answering 57 of the previously disputed questions, in addition to "follow up" examination.  (Uehling Depo. Vol. III.)  Counsel for Mr. Uehling believed the Court's ruling on the crime-fraud exception to be erroneous; nevertheless, *rather than defy the Court's order*, he sought relief from the Ninth Circuit to resolve the issue by way of writ proceedings.

The Ninth Circuit subsequently determined that Mr. Uehling's remedy was by way of direct appeal from contempt, were this Court to ultimately order him in contempt.  In other words, the only avenue for Mr. Uehling to obtain judicial review and protect privileged information is from a contempt order; doing exactly that is hardly conduct warranting "the most severe sanctions," nor is it a "flagrant" disregard for orders of this Court.  Instead, it is simply conduct that creates an appealable order.  Millennium's characterization of Mr. Uehling and his counsel are unjustified and insulting, especially given the cooperation and professional courtesy that has been extended to Millennium's qui tam lawyers despite Mr. Uehling's counsels' vehement belief that these discovery proceedings against Mr. Uehling are an abuse of the discovery process and an all-around witch hunt.

The purpose of contempt of court is to vindicate the public interest to insure the administration of justice.  *Penfield Co. of California v. SEC*, 330 U.S. 585 (1947).  Neither of

these goals is implicated here.  Millennium has more than enough testimony to use regarding Mr. Uehling's credibility or bias (which was, of course, the only basis on which this Court allowed the questioning to proceed to begin with (Doc. 22)), the *Nelson* litigation remains unaffected by these discovery proceedings, and Mr. Uehling's own attempts to have these issues decided by way of writ rather than contempt evidences no disdain for the authority of this Court.  None of the basis for contempt are present here.

Moreover, Mr. Uehling will have no remedy whatsoever if, as a third party, he complies with the discovery order; it would moot any appeal.  *Fed. Ins. Co. v. Me. Yankee Atomic Power Co.*, 311 F.3d 79, 83 (1st Cir. 2002).  Truly, his only remedy to attempt to clear his name from the implied finding, readily available on WestLaw, that he committed a crime by giving documents suspected to implicate Millennium in fraudulent and possibly criminal activity is by way of contempt.  If this Court concludes contempt is necessary, it must recognize that Mr. Uehling's conduct was done to create an appealable order if necessary, and nothing more.

**B.    Millennium Must Show That It Needs An Answer To The Disputed Questions To Justify A Recommendation Of Contempt**

Additionally, as made clear in one of Millennium's own cited cases, a finding of contempt for refusal to answer a question must be grounded in an actual need for an answer to the question.  *United States v. Alfredo Flores*, 628 F.2d 521, 527 (9th Cir. Cal. 1980) ["refusal to answer a question which is of no assistance to the interrogator does not constitute a material obstruction of justice"], citing *Grudin v. United States*, 198 F.2d 610 (9th Cir. 1952).  "Enforcing a discovery request for irrelevant information is a per se abuse of discretion." *Cacique, Inc. v. Robert Reiser & Co.*, 169 F.3d 619, 622 (9th Cir. Cal. 1999), citing *Epstein v. MCA*, 54 F.3d 1422 (9th Cir. 1995).  Here, as set forth above, Millennium cannot show any relationship between the currently disputed questions and the *Nelson* litigation.  The currently disputed questions are so unimportant to the *Nelson* litigation that none of the attorneys in the Nelson matter appear for the depositions – not even by phone.  In fact, Plaintiff's counsel did not even bother to call and make anyone aware that he was not going to attend Mr. Uehling's deposition.

/ / /

**OPPOSITION TO REQUEST FOR OSC TO HOLD
THIRD PARTY WITNESS UEHLING IN CONTEMPT**

1    (Uehling Vol. III, p. 420:9-21.)   And Millennium's own employment law trial counsel did not

2    even appear at the final deposition.  (Uehling Vol. IV.)

3            Even if it was unclear at the time of the original motion to compel whether Mr.

4    Uehling's answers to these three questions might have been relevant to the *Nelson* trial, the

5    subsequent conduct of the *Nelson* attorneys now belies any such claim.  Mr. Loucks desires the

6    information to advance his presumed defense of criminal and civil cases against the Department

7    of Justice, but his right to that discovery is best decided by the judge in a future criminal

8    proceeding or qui tam litigation, if any.

9            Accordingly, Mr. Uehling respectfully submits that a finding of contempt here is

10   not appropriate because Millennium has not established a need for answers to the questions for

11   which it seeks to hold Mr. Uehling in contempt; a mere refusal to comply with a prior discovery

12   order is insufficient.  *United States v. Alfredo Flores*, *supra*, 628 F.2d at 527.

13       **C.    The Coercive Powers Millennium Asks This Court To Exercise Are An**
              **Attempt To Deny Mr. Uehling His Appeal Rights**
14

15           Millennium asks that this Court recommend Mr. Uehling be confined as a

16   recalcitrant witness (28 U.S.C. § 1826); be ordered to pay $5,000 per day until he answers those

17   three questions; and that he and his counsel pay sanctions.  For the reasons set forth above, none

18   of these penalties are warranted in this case.  Mr. Uehling and counsel are simply preserving his

19   right to appeal, nothing more.  Millennium's attempts to paint Mr. Uehling as simply "running

20   the clock" are specious given the resources *Mr. Uehling* spent trying to get this issue resolved

21   quickly, and given Millennium's great efforts to prevent an early resolution.

22           The Ninth Circuit expressly acknowledged that the only appellate review that will

23   be available to Mr. Uehling is to create an appealable order by way of contempt.  See *Uehling v.*

24   *United States Dis. Ct for the Eastern District*, Ninth Circuit Case 13-72621, Dkt Entry 16-1.  If

25   this Court recommends contempt, it could do so solely for the purposes of creating an appealable

26   order without the need for any coercive sanctions, so that Mr. Uehling may exercise his appeal

27   rights as expressed by the Ninth Circuit's Order.  Under the circumstances of this case, that

28   / / /

**OPPOSITION TO REQUEST FOR OSC TO HOLD**
**THIRD PARTY WITNESS UEHLING IN CONTEMPT**

DOWLING|AARON
INCORPORATED
ATTORNEYS AND COUNSELORS AT LAW

1  would be appropriate.  *United States v. Westinghouse Electric Corp.*, 648 F.2d 642, 651 (9th Cir.

2  1981) (choice of discovery sanctions left to discretion of district court).

3       D.   **Millennium Opposed Uehling's Attempt To Have The Privilege Issue Resolved Expeditiously And Cannot Now Complain That There Is No Time For Appeal**

4

5       Moreover, there is no basis whatsoever in Millennium's accusation that Mr.

6  Uehling has ever attempted to "wait out the clock" in this discovery dispute.  The opposite is

7  true.  If anything, Millennium has created the procedural dilemma it now faces; Millennium

8  ignores that it *actively opposed Mr. Uehling's expedited proceeding*s in the Ninth Circuit Court

9  of Appeals, when Mr. Uehling filed an emergency motion and pursued an extraordinary writ.

10 *Mr. Uehling* is the party that sought expedited review of the attorney client privilege question by

11 way of writ review in the Ninth Circuit.  If Millennium was so concerned with resolution of this

12 issue prior to its *Nelson* trial date, it should not have expressly argued to the Ninth Circuit that

13 Mr. Uehling's rights were "protected sufficiently by [his] ability to disobey and test the . . .

14 court's discovery order on appeal from a subsequent citation for contempt."  See *Uehling v.*

15 *United States Dis. Ct for the Eastern District*, Ninth Circuit Case 13-72621, Millennium's

16 Answer to Petition for Writ of Mandamus, page 10, Dkt Entry 7.  Millennium further urged to

17 the Ninth Circuit that "UEHLING WILL NOT BE DAMAGED OR PREJUDICED IN ANY

18 WAY NOT CORRECTABLE ON APPEAL." (*Id.* at 11.)  Despite these prior judicial positions

19 urging the Court to require Mr. Uehling to pursue relief by way of direct appeal, Millennium

20 now argues that Uehling has somehow *delayed* these proceedings and should not be given the

21 time to pursue his appeal rights.

22       Had Uehling desired to "wait out" the *Nelson* litigation, he could have

23 immediately refused compliance and created an immediately appealable order, allowing the

24 crime-fraud question to have been litigated by way of direct appeal.  A direct appeal of contempt

25 filed by Mr. Uehling at any time last summer would still be pending, and even less likely to have

26 been resolved prior to the *Nelson* trial date.  The procedural posture that Millennium now finds

27 itself in is of its own making.

28 / / /

1       This is even more true given that Mr. Uehling's April 2 & 3, 2013, deposition was

2   taken at the very end of the window which would have made compelling his further testimony

3   possible – and Mr. Uehling cooperated, simply because of the professional courtesy of his

4   counsel – to ensure that Millennium was able to take his compelled deposition testimony prior to

5   Millennium's own discovery cut-off.  (See *Nelson v. Millennium Laboratories, Inc*., No. 2:12-cv-

6   01301-SLG (D. Ariz. Filed June 18, 2012, Doc. 27.).  Whether Millennium should be entitled to

7   a delay of trial in order to obtain the answers to three questions of a third party witness is a

8   question the *Nelson* court is in the best position to answer.

9   **E.**     **If This Court Recommends Contempt, And Recommends A Penalty, It**

10  **Should Also Recommend A Stay Pending Appeal**

11      Again, the time dilemma Millennium now faces is of its own making, yet it seeks

12  to have this Court incarcerate Mr. Uehling and fine him $5,000 **per day** in order to make it

13  impossible for him to exercise his appellate remedies.  Of course, the Ninth Circuit's basis for

14  not hearing this dispute on mandamus was because of the availability of appeal remedies to Mr.

15  Uehling, which Millennium wants to make, for all practical purposes, non-existent.  In a case of

16  civil coercive contempt, district courts routinely stay the contempt fines pending appeal. See

17  *Fed. Ins. Co. v. Me. Yankee Atomic Power Co*., 311 F.3d 79, 82 (1st Cir. Me. 2002) ["lower

18  courts are free to consider the circumstances in determining appropriate sanctions and to stay

19  those sanctions pending appeal"].

20  / / /

21  / / /

22  / / /

23  / / /

24  / / /

25  / / /

26  / / /

27  / / /

28  / /

**OPPOSITION TO REQUEST FOR OSC TO HOLD
THIRD PARTY WITNESS UEHLING IN CONTEMPT**

DOWLING|AARON
INCORPORATED

**F.** **Uehling Continues To Object To Hearing The Matter As a Discovery Dispute**

For purposes of preserving his objections and due process claims, Mr. Uehling continues to object to hearing this matter as a discovery matter.  While the order at issue arises out of a discovery dispute, contempt proceedings are not subject to the summary proceedings envisioned by Local Rule 251(e).  There has not been a "complete failure" to comply with discovery; to the contrary, Mr. Uehling has appeared at every deposition Millennium has noticed.

Dated:     May 23, 2014                    DOWLING AARON INCORPORATED


                                           By: /s/Stephanie Hamilton Borchers
                                           DONALD R. FISCHBACH
                                           STEPHANIE HAMILTON BORCHERS
                                           G. ANDREW SLATER
                                           Attorneys for Non-Party to Action
                                           RYAN UEHLING

16440-001\01542545.DOCX.

OPPOSITION TO REQUEST FOR OSC TO HOLD
THIRD PARTY WITNESS UEHLING IN CONTEMPT